OPINION
Defendant-appellant, Vance A. Easley, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of one count of murder, in violation of R.C. 2903.02, and one count of having a weapon while under a disability, in violation of R.C. 2923.13.
Defendant's convictions arise out of a shooting which occurred at approximately 12:30 a.m., on December 19, 1999, in Columbus, Ohio, and which resulted in the death of Raymond Brock.
According to the testimony of Brock's friend, Neroy Carter, the events surrounding the shooting were as follows: Carter and Brock had spent most of the day at Brock's apartment watching football on television. At approximately 11:15 p.m., Brock's girlfriend, Jennifer Gaudette, arrived home from work. Shortly thereafter, Gaudette gave Brock $10 and asked him if he and Carter would walk to the corner carryout to get her a sandwich and some beer for themselves. Brock agreed, and he and Carter left for the carryout.
As Carter and Brock approached the carryout, they ran into defendant, who, Carter testified, he knew at the time only by the nickname "Ease." Defendant was accompanied by several other people, one of whom Carter knew as "Santino." Carter further testified that he had told Brock earlier in the day that he wanted to avoid defendant because he still owed defendant $10 on a $20 bet he had lost, defendant was pressing him for payment, and he did not have the money.
According to Carter, defendant confronted him about the $10 he owed him. The two men argued and defendant pulled a black revolver from under his shirt. However, after pulling the gun, defendant indicated that he would settle the matter without his gun and placed it on top of a nearby car. With Brock a short distance away, Carter and defendant engaged in a brief fight, which ended with defendant on the ground and Carter standing over him. As Carter stood over defendant, he saw Santino pull a black semi-automatic pistol from under his shirt and come toward him. Upon seeing Santino coming at him with a gun, Carter took off running. Carter ran to the carryout and told the clerk to call the police.
As Carter waited in the carryout, he heard two gunshots. Upon hearing the gunshots, Carter ran back outside to see what was happening. When he exited the carryout, Carter saw Brock staggering towards him holding his side. As the two men approached one another, Brock told Carter that he had been shot and then fell into Carter's arms. According to Carter, as he attempted to comfort Brock, Brock stated, "Ease shot me."
Columbus Police Officer Eric Babcock also testified at defendant's trial. According to Officer Babcock, he was dispatched to the scene in response to a telephone call reporting a shooting. Officer Babcock arrived on the scene within minutes of the shooting and found Brock lying on the front steps of an apartment building. As Officer Babcock approached Brock, Brock stated that he had been shot. Officer Babcock then asked Brock who had shot him and Brock "yelled * * * `Ease did it.'" Because Officer Babcock did not understand Brock's use of the word "Ease," he asked Brock to repeat himself several times. Finally, Brock stated, "Easley did it," and only then did Officer Babcock understand that Brock had been using a nickname to describe someone named Easley. With Carter's help, defendant was arrested a short time later in a different section of the apartment complex where the shooting occurred.
On March 6, 2000, defendant was indicted on one count of murder with a gun specification, and one count of having a weapon while under a disability. By agreement of the parties, the weapon under a disability charge was tried to the court, with the verdict thereon deferred until after the conclusion of a jury trial on the murder charge.
Beginning on September 18, 2000, defendant was tried before a jury on the single count of murder. At the close of the state's case and again at the close of all the evidence, defendant moved for an acquittal pursuant to Crim.R. 29. Both motions were overruled by the trial court.
At approximately 3:30 p.m., on December 4, 2000, the jury began its deliberations. At approximately 11:30 a.m., on December 5, 2000, the jury notified the trial court that it was deadlocked. With the agreement of the parties, the trial court reminded the jury that unanimity was required and sent the jury back for further deliberations. Sometime later that same afternoon, the jury again notified the court that it was unable to reach a unanimous verdict. The trial court then gave a "Howard charge" to the jury and sent the jury back for further deliberations. Early on the morning of December 6, 2000, the jury returned a verdict of guilty on the murder count. The trial court then announced that it was finding defendant guilty of having a weapon under a disability.
One week later, the trial court sentenced defendant to an indefinite prison term of fifteen years to life on the murder charge, three years on the gun specification, and twelve months on the weapons under a disability charge, and ordered that the sentences for the gun specification and the weapon under a disability conviction be served consecutively to the sentence for murder. Defendant appeals from his murder conviction and sentence, assigning the following errors:
 ASSIGNMENT OF ERROR I THE COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO CRIM.R. 29, WHERE THE EVIDENCE WAS NOT SUFFICIENT TO MEET THE ELEMENTS OF THE OFFENSE AND WHERE THE SUBSEQUENT JURY VERDICT WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE, ALL IN VIOLA-TION OF DUE PROCESS OF LAW GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
 ASSIGNMENT OF ERROR II THE COURT ERRED IN FAILING TO DECLARE A MISTRIAL WHERE THE STATE WITHHELD MATERIAL EXCULPATORY AND IMPEACH-MENT EVIDENCE, WHICH DEPRIVED APPELLANT OF A FAIR TRIAL, IN VIOLATION OF DUE PROCESS OF LAW GAUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
Defendant's first assignment of error asserts that defendant's conviction for murder is against both the sufficiency and the manifest weight of the evidence. Challenges to the sufficiency of the evidence and the manifest weight of the evidence are analytically distinct. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. We will begin by addressing defendant's sufficiency challenge to his attempted murder conviction.
In reviewing a claim that a criminal conviction is against the sufficiency of the evidence, an appellate court must determine whether the evidence presented at trial and viewed in a light most favorable to the prosecution would allow a rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Thompkins, supra.
In order to establish that defendant was guilty of murder, the state was required to show that defendant purposely caused the death of Raymond Brock. R.C. 2903.02(A). To this end, the state presented the testimony of Brock's friend, Carter, and Officer Babcock, both of whom testified that, when they spoke to Brock within minutes of when he was shot, he stated that defendant had shot him. Although defendant would have us consider other perhaps plausible interpretations of Carter's and Babcock's testimonies, our inquiry requires us to view their testimonies in the light most favorable to the prosecution. Viewed in such light, Carter's and Babcock's testimonies are plainly sufficient to establish that defendant caused Brock's death.
However, defendant contends that the state failed to present sufficient evidence that defendant acted with purposeful intent in causing Brock's death. Because intent lies within the mind of the perpetrator and, therefore, seldom can be proven by direct evidence, the law has long recognized that intent must be proven by looking to the facts and circumstances surrounding an event. State v. Garner (1995),74 Ohio St.3d 49, 60. Further, "[a]n intent to kill may be presumed where the natural and probable consequence of the wrongful act is to produce death and such intent can be deduced from all surrounding facts, including the use of a deadly weapon." State v. Williams (Dec. 13, 1983), Franklin App. No. 83AP-479, unreported.
In the present case, the evidence shows that defendant shot Brock with a revolver following a fight with Brock's friend, Carter. In addition, Deputy Coroner, Dorothy Dean, M.D., testified that Brock had actually been shot twice, once in the chest and once in the buttock. Together, the fact that a gun was used to kill Brock, that Brock was shot twice, and that the shooting arose out of a dispute with Brock's friend, provide sufficient evidence to allow a jury to reasonably find that defendant acted purposely in causing Brock's death.
We turn now to defendant's contention that his conviction for murder is against the manifest weight of the evidence. In contrast to reviewing defendant's sufficiency challenge, where we were required to view the evidence in a light most favorable to the state, in reviewing defendant's manifest weight claims, we sit as a "thirteenth juror," reviewing the entire record, weighing the evidence and all inferences reasonably drawn therefrom, and considering the credibility of witnesses. Thompkins, supra, at 387. However, our power to grant a new trial on manifest weight grounds is discretionary and will be exercised only in the exceptional case where the evidence weighs heavily against the conviction, and it appears that the jury lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. Id.
In support of his argument that his conviction is against the manifest weight of the evidence, defendant argues that Carter's testimony should be given little weight, as his testimony that Brock told him that "Ease shot me" is contradicted by the testimony of Columbus Police Detective James McClary, who interviewed Carter at the scene following the shooting. According to McClary, Carter told him that Brock had only said that he had been shot. In fact, McClary testified that he specifically asked Carter if Brock had said anything else, and Carter responded, "No."
It is clear that Detective McClary's testimony casts some doubt on Neroy Carter's credibility. However, because Officer Babcock also testified that Brock told him that it was Easley who had shot him, the jury could reasonably have convicted defendant even if it chose to discount or disbelieve Carter's testimony. Accordingly, we cannot find that defendant's conviction is against the manifest weight of the evidence.
Defendant's first assignment of error is overruled.
Defendant's second assignment of error asserts that the trial court erred in failing to declare a mistrial pursuant to Brady v. Maryland (1963), 373 U.S. 83, and its progeny when it became apparent that the state had failed to provide the defense with a copy of a taped police interview of Brock's fiancée, Jennifer Gaudette, which contained evidence favorable to defendant. In particular, defendant claims that the Gaudette tape contained testimony which would have cast further doubt on Neroy Carter's credibility, as the explanation of the events leading up to the shooting given by Gaudette on the tape is different than the version of events testified to by Carter.
The record reveals that the Columbus Police interviewed Jennifer Gaudette shortly after the shooting and tape-recorded the interview. On April 26, 2000, defense counsel made a discovery request pursuant to Crim.R. 16, which included a request that the state produce any evidence in its possession that is favorable to defendant. The state did not produce the Gaudette tape in response to this discovery request. It was only after Carter had completed his testimony and been dismissed that the state provided defense counsel with a copy of the Gaudette tape late on the second day of trial.
After taking time to review the Gaudette tape, defendant moved for a mistrial. The trial court denied defendant's motion for a mistrial. However, in considering defendant's motion for a mistrial, the trial court acknowledged that the Gaudette tape should have been provided to defendant as part of discovery, but concluded that any prejudice to defendant could be cured by allowing defendant to recall Carter for further cross-examination. In fact, the trial court stated that its ruling that defendant could recall Carter would include sending a sheriff's deputy to get Carter if necessary. We note, however, that it appears from the transcript that the trial court reached these conclusions based solely on defendant's assertions as to the contents of the tape and without having conducted its own review of the tape.
After the close of his case-in-chief, defendant renewed his motion for a mistrial. The discussion which ensued regarding this motion reveals that Carter had been scheduled to appear for further testimony on that day, but failed to show up, and that further attempts to reach Carter by phone had been unsuccessful. Nonetheless, and in spite of an earlier indication that it would send a deputy to get Carter if necessary, the trial court declined to send a deputy to get Carter, and denied defendant's motion for a mistrial.
Although defendant's assertions regarding the Gaudette tape create a colorable basis for reversing his conviction, an actual reversal must be based on an independent review of the Gaudette tape, and not upon defendant's assertions alone. Unfortunately, we are unable to review the contents of the Gaudette tape as neither the Gaudette tape nor a transcript of the tape is part of the record on appeal. The transcript reveals that at the close of the discussion regarding defendant's initial motion for a mistrial, defense counsel indicated that the Gaudette tape had been transcribed and that he intended to allow the state to review the transcript before proffering the transcript to the court. However, no such proffer ever occurred. In the absence of anything to review, defendant's second assignment of error must be overruled. We note, however, that a claim of ineffective assistance of counsel brought in an action for post-conviction relief would provide an appropriate forum in which to develop the contents of the Gaudette tape. State v. Holloway (Apr. 14, 1992), Franklin App. No. 91AP-365, unreported.
Defendant's second assignment of error is overruled.
Defendant's first and second assignments of error having been overruled, the judgment of the trial court is affirmed.
Judgment affirmed.
BRYANT, P.J., and BROWN, J., concur.